UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER WOLCOTT,

                                                Plaintiff,


                  v.                                              1:04-CV-1273
                                                                  (J. Sharpe)
COMMISSIONER OF SOCIAL
SECURITY,

                                                Defendant.
_____

APPEARANCES:                                OF COUNSEL:

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff

GLENN T. SUDDABY                            WILLIAM H. PEASE
United States Attorney for the              Assistant U.S. Attorney
  Northern District of New York
Attorney for Defendant



GUSTAVE J. DI BIANCO, Magistrate Judge


                  REPORT-RECOMMENDATION

        This matter was referred to me for report and recommendation by the

Honorable Gary L. Sharpe, United States District Judge,  pursuant to 28 U.S.C. §

636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with

General Order 18.

## PROCEDURAL HISTORY

On May 23, 2002, plaintiff's father filed an application for Supplemental Security Income (SSI) benefits on behalf of his son, Christopher  (Administrative Transcript ("T") at 79-99).  The application alleges that Christopher had been disabled since January 1, 1992 because of gross motor deficits, learning delays, poor concentration, and hyperactivity.  (T. 79-99, 49, 132).  The application was denied initially.  (T. 50-53).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on March 15, 2004.  (T. 20-48).  Plaintiff, his father, and a family friend testified.  (T. 20-48).  The ALJ found that the plaintiff was not disabled.  (T. 11-19).  The ALJ's decision became the final decision of the Commissioner  when the Appeals Council denied plaintiff's request for review on September 3, 2004.  (T. 4-7).

## CONTENTIONS

The plaintiff[1] makes the following claims:

(1) The ALJ erred in his assessment of the severity of plaintiff's impairments.  (Brief, p. 3).

---

[1]Plaintiff in this decision means the child.

(2) The ALJ's finding that the testimony was credible is inconsistent with the ALJ's findings about plaintiff's limitations.  (Brief, p. 3).

(3) The Commissioner's decision is not supported by substantial evidence in the record.  (Brief, p.3).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

This court adopts the facts contained in the defendant's brief under the heading "Testimonial, Vocational and Other Evidence" on pages 2 and 3, with the exception that the testimony shows that plaintiff can tie his shoes but sometimes asks his sister to tie them so that the laces will be "nice and tight".  (T. 36-37).  In addition, the testimony of a family friend, Ms. Rhiblilski, is not that plaintiff repeatedly got into fights at school but that he "... gets in fights in school.  He's had several referrals."  (T. 29).

## DISCUSSION

### 1.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court

3

may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**2.  Child's Benefits**

Congress amended the definition of childhood disability in 1996. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104-193, § 211(d)(1)(A)(ii), 110 Stat. 2105 (codified at 42 U.S.C. § 1382c).  Prior to 1996, a child was entitled to SSI disability benefits if he/she suffered from a "medically determinable physical or mental impairment of comparable severity" to that which would disable an adult. *See* 42 U.S.C. § 1382c(a)(3)(A) (1994).

The PRWORA replaced this "comparable severity" standard with one that focuses on whether a child has "marked and severe" limitations. 42 U.S.C. § 1382c.  This new standard involves a three-step analysis. 20 C.F.R. § 416.924(a). The first question is whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b).  If not, then the second inquiry is whether the child has a severe impairment. *Id.* § 416.924(c).  A "severe" impairment is one that is more than a "slight abnormality." *Id.*  If the child's impairment is severe, then the third question is whether the impairment meets or is medically or functionally equal in severity to a disability listed in the Listing of Impairments. *Id.* § 416.924(c)(citing to 20 C.F.R. Part 404, Subpt. P, App. 1 (the listings)).  If all three of the above requirements are met, and the child's disability has met the twelve month

durational requirement,[2] then the child will be considered disabled for purposes of SSI disability benefits. 20 C.F.R. § 416.924(d).

In assessing functional equivalence, restrictions are to be evaluated in terms of

(a)  How the child <u>functions</u> as compared <u>to same age children</u> who do not have impairments;

(b)  <u>Combined effects</u> of multiple impairments;

(c)  How well the child can <u>initiate, sustain, and complete activities</u>, including the amount of help or adaptations the child needs, and the effects of structured or supportive settings,

(d)  Ability to function <u>in unfamiliar or unusual settings</u>,

(e)  Early intervention and school programs,

(f)  Impact of <u>chronic illness and limitations</u> that interfere with the child's activities over time,

(g)  <u>The effects of treatment</u> (including medications and other treatment). (emphasis added (a) - (g) ).

In following the above guidelines, consideration must be given any limitations that result from the child's symptoms, including pain.

In evaluating functional equivalence consideration will be given to the <u>effects of the child's impairment(s) on six "domains"</u>, or broad areas of functioning: (emphasis added).

1.  Acquiring and using information,

2.  Attending and completing tasks,

3.  Interacting and relating with others,

4.  Moving about and manipulating objects,

5.  Caring for oneself,

6.  Health and physical well-being (i.e. cumulative 'physical' effects of physical and mental impairment).

_____

[2] 20 C.F.R. §§ 416.909, 416.924(d)(1)

An impairment(s) is functionally equivalent to the "Listings" if there is "marked" limitation in two of the domains, or an "extreme" limitation in one domain.  However comparisons are not made to any specific Listing in determining functional equivalence.

20 C.F.R. § 416.926a.

## 3.  Medical Evidence

According to plaintiff's mother, plaintiff had some developmental delays during early childhood.  (T. 215).  Plaintiff also was diagnosed as having low muscle tone, problems with his balance, and low strength throughout his body.  (T. 214).  As a result, plaintiff had some difficulty playing sports and had difficulty with gross motor coordination, fine motor coordination, and eye-hand coordination.  (T. 214).

Plaintiff was examined at the Shriners Hospital in Massachusetts when he was 3 years old and again when he was 10 years old.  (T. 152-156).   Dr. Philip Gates from the Shriners Hospital wrote on November 4, 1993, that his impression was "apparently developmental delay" and found only a medical problem with plaintiff's feet.  (T. 155).  Dr. Gates recommended no additional treatment but follow up in approximately nine months.  (T. 155).  Plaintiff returned to the Shriners Hospital in July of 2000, and Dr. Nathan Taylor did not find any problems with plaintiff's feet or lower extremities and recommended that plaintiff

return in two years.  (T. 156).  Dr. Taylor's notes state that "plaintiff and his mother have no complaints."  (T.  156).

There are voluminous school records in the Administrative Transcript and these records contain reports about plaintiff from school psychologists, teachers, and members of a Committee on Special Education.  (T. 175-195).

The reports from the Hudson City School District confirm that plaintiff has some deficits in his gross motor skills and fine motor skills resulting in some difficulty in playing sports, and some difficulty with speech.  (T. 187, 194).  As a result, the plaintiff was placed in Special Education classes and received occupational therapy, physical therapy, special assistance in a "resource class", and another type of assistance called a consultant teacher.  (T. 208-213, 175, 187, 189).

Over the years, the special programs at the Hudson City School District helped plaintiff with his physical and cognitive impairments and his occupational therapy was decreased.  (T. 175).  However, plaintiff's physical therapy was continued at a frequency of once each month.  (T. 187).  The school district has many reports which examine and comment on **all** aspects of plaintiff's mental and physical functions, including his attitude, his ability to accept rules, his ability to

function in groups, and his level of speech and academic performance. (T. 178, 187, 189, 191, 194).

In addition, the record contains special assessments by two pyschologists, one during June of 2002 by Stephanie Tsandikos, Ph.D., and another, one month later by Annette Payne, Ph.D. (T. 200-204, 219-226).

Psychologist Stephanie Tsandikos found "solidly average" results from a non-verbal intelligence test (T. 201), and found good memory and average intelligence for cognitive functioning (T. 202). She also referred to plaintiff's low muscle tone and decreased strength. (T. 201).

Psychologist Annette Payne performed two consultative examinations, one focusing on intelligence and the other focusing on psychiatric issues. These two reports are very similar. (T. 219-226). Psychologist Payne found that plaintiff had a Verbal IQ of 92, a Full Scale IQ of 83, and was functioning in the Low Average range of intelligence, with a learning disability. She concluded that plaintiff had a learning disorder which was not otherwise specified and had mild Attention Deficit Hyperactivity Disorder. (T. 222).

During July of 2000, a school psychologist rated plaintiff's intelligence and found a Verbal IQ score of 91 and a Full Scale IQ score of 87. (T. 193-94). The school psychologist opined that plaintiff's cognitive abilities were near average,

and that plaintiff had weaknesses in lengthy verbal expression, articulation, and fine motor control and planning.   (T. 194).  Plaintiff's school records have many observations by the Committee on Special Education, and those records indicate that plaintiff was below grade level for reading and language skills.  (T. 177-178, 189, 210).  Because plaintiff was retained in an earlier grade and repeated that year, the Speech Therapist stated that he is "... at, or near his level".  (4th grade). (T. 189, 210).

During April of 2002, plaintiff's physical therapist examined plaintiff and found decreased strength, decreased gross motor and eye-foot coordination, and weakness in plaintiff's legs and ankles.  (T. 256-257).  The physical therapist noted that plaintiff did not have difficulty in his school environment and was able to negotiate stairs, hallways and a playground, and was able to participate in gym class.  (T. 187 - repeated at 256).

Plaintiff had a consultative examination by Dr. Jogendra Chhabra during July of 2002.  Dr. Chhabra noted that plaintiff had low muscle tone and poor strength and balance but that his gait was normal, and plaintiff did not have any abnormalities in his manner of walking or in his extremities.  (T. 216-217).  Dr. Chhabra found normal range of motion in plaintiff's back and extremities (T. 217), and normal ability to run and skip (T. 216).  Dr. Chhabra found no limitations in

plaintiff's upper extremities for fine and gross motor activities and no limitations

with age-appropriate sports and recreational activities.  (T. 218).

Plaintiff's treating physician, Dr. Vahe Keukjian, is a family practitioner

who has treated plaintiff for many years.  (T. 205).  During June of 2002, Dr.

Keukjian wrote that because of plaintiff's struggling at his grade level and

continued poor gross and fine motor function, Dr. Keukjian believed plaintiff

"should be considered disabled".  (T. 205).  Approximately three weeks prior to

his June 26, 2002 Note, Dr. Keukjian wrote "it seems to me that he is a candidate

for disability designation".  (T. 207).  Dr. Keukjian believed that an examination

by a pediatric neurologist and an opinion from a pediatrician about plaintiff's

development would be helpful.  (T. 207).  During September of 2003, plaintiff's

attorney sent Dr. Keukjian a form with three choices.  Dr. Keukjian checked the

choice indicating that plaintiff would require supported employment services

including job coaching services.  (T. 236).  This form does not give any specific

reasons or findings to support the opinion of Dr. Keukjian.

## 4.  **The ALJ's Credibility Finding About the Hearing Testimony**

Plaintiff argues that since the ALJ found the hearing testimony credible, he

should have accepted the statement from plaintiff's family friend regarding

plaintiff's problems with soiling his pants.  Plaintiff argues that this testimony was

that this problem occurs "every day" or nearly every day.  (Brief, p. 3).  The testimony on page 28 of the transcript does not state **any** frequency and does not state that this problem occurs "every day" or "nearly" every day.  (T. 28).  The testimony does **not** support plaintiff's argument.  In addition, a Social History Update completed by the plaintiff's father for the Hudson City School District in July of 2000 states that plaintiff's problem occurs **occasionally**.  (T. 196).

### 5.  <u>The Record Supports the ALJ's Findings About Plaintiff's Limitations</u>

The record supports the ALJ's findings that plaintiff's severe impairments did not meet or medically equal a listed impairment.  (T. 18-19).

Listing 112.11 "Attention Deficit Hyperactivity Disorder" requires medically documented findings of all three of the following: 1.  Marked inattention; 2. marked impulsiveness; and 3. marked hyperactivity, **plus** at least two of the following: a.  marked impairment in age-appropriate cognitive/communicative function; b. marked impairment in age-appropriate social functioning; c. marked impairment in age-appropriate personal functioning; and d. marked difficulties in maintaining concentration, persistence, or pace.  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.11.

The record does not contain substantial evidence that plaintiff experienced the severity required by the regulations since there is no indication that plaintiff's,

inattention, impulsiveness, or hyperactivity was "marked". Psychologist Dr. Payne observed that plaintiff's attention was only mildly impaired. (T. 225). Dr. Chhabra observed that plaintiff's attention span was age-appropriate. (T. 216). Notes from the Hudson City School District on an Individual Education Plan indicated that plaintiff was occasionally impulsive. (T. 178). Plaintiff is not taking any medication for hyperactivity, and the school records do not show that this was a serious or frequent problem. (T. 177-204).

With respect to plaintiff's cognitive and communication functions, a school psychologist assessed that plaintiff's cognitive abilities were near average (T. 194), and a speech therapist observed that plaintiff's speech and language skills were near his grade level. (T. 189). Stephanie Tsandikos, a psychologist for Columbia County, noted that plaintiff's non-verbal intelligence test was consistent with an average range of intellectual function, and another psychologist, Dr. Payne, observed that plaintiff's speech and language skills were age appropriate (T. 220). While plaintiff's function is slightly below average, it is not so far below average that it rises to the level of a marked impairment.

This testimony and the testimony of a family friend show that plaintiff does sports-type activities, including playing pool, swimming, and attending a Boys Club, in addition to visiting friends. (T. 26, 35, 36). In addition, plaintiff's ability

to groom himself and accomplish personal functions was appropriate since he was able to care for himself.  (T. 226).  Although plaintiff did have problems with occasionally sullying his pants, this has not been documented as an ongoing problem in any of the school records or in the many examinations by psychologists and physicians.

6. **The ALJ's Finding That Plaintiff's Impairments Were Not Functionally Equivalent to a Listed Impairment is Supported by Substantial Evidence in the Record**

The regulations provide that a child has an impairment that is functionally equivalent to a listed impairment if it causes an extreme limitation in at least one, or a marked limitation in at least two, of the six domains of functioning.  20 C.F.R. §§ 416.926a(B)(1) and 416.926a(D).  The domains are:

A. **Acquiring and Using Information**

The domain of acquiring and using information focuses on how well the child acquires, learns, and uses information.  20 C.F.R. § 416.926a(g).

The extensive school records show that plaintiff was obtaining passing grades, and one or more of his teachers stated that he was performing well.  (T. 234-46).  Some of the report cards in the record such as his fifth grade report card show average grades in academic subjects.  Dr. James Albert, a medical doctor

who assessed plaintiff's limitations, wrote that plaintiff had a less than marked

limitation in acquiring and using information.  (T. 230).

## B.  <u>Attending and Completing Tasks</u>

The domain of attending and completing tasks considers how well a child

focuses and maintains his attention and how well he begins, carries through and

finishes activities, including the pace at which he performs activities and his ease

in changing activities.  20 C.F.R. § 416.926a(h).

The Notes from plaintiff's Individual Educational Program stated that

plaintiff was an aggressive learner who was focused and concentrated for most of

the day.  (T. 210).  Other medical opinions, including that of Dr. Chhabra, stated

that plaintiff had only moderate limitations in educational activities.  (T. 218).  Dr.

Payne opined that plaintiff's attention and concentration were only mildly

impaired.  (T. 225).

## C.  <u>Interacting and Relating With Others</u>

The domain of interacting and relating with others considers how well the

child initiates and sustains emotional connections with others, develops and uses

the language of his community, cooperates with others, complies with rules,

responds to criticism, and respects and takes care of the possessions of others.  20

C.F.R. § 416.926a(I).

The testimony from a family friend at the hearing stated that plaintiff visited with friends and played basketball and pool at a local Boys Club.  (T. 26).  One of plaintiff's teachers stated that plaintiff was a pleasure to teach.  (T. 243).  Two physicians, Dr. Tsandikos and Dr. Chhabra, stated that plaintiff related to them in an age-appropriate manner and was pleasant.  (T. 216, 203, 230).  The extensive school records on file do not show any major problems with plaintiff's interaction with others, except excessive talk in groups and some hyperactivity.

**D.  Moving and Manipulating Objects**

The domain of moving about and manipulating objects concerns how well the child moves his body from one place to another and how well he moves and manipulates things.  20 C.F.R. § 416.926a(j).

A State Agency medical consultant, Dr. Albert, assessed that plaintiff had no limitation in moving about and manipulating objects.  (T. 232).  The record fully supports this assessment since plaintiff himself reported that he enjoys playing soccer, baseball, and football (T. 201), and a family friend testified that plaintiff played basketball, pool and would go swimming.  (T. 26-27).  Dr. Chhabra's examination found that plaintiff had no difficulties walking, skipping, running and getting on or off the examination table, and Dr. Chhabra stated that

plaintiff had no limitations regarding age-appropriate sports and recreational activities.  (T. 218).

## E.  Caring for Yourself

The domain of caring for yourself considers how well the child maintains a healthy emotional and physical state, including how well he has his physical and emotional needs met in appropriate ways, how he copes with stress and changes in his environment, and whether he cares for his own health, possessions and living area.  20 C.F.R. § 416.926a(k).

Dr. Albert assessed that plaintiff had no limitations in caring for himself. (T. 232).  The record fully supports that assessment.  Plaintiff's personal functioning was appropriate according to his mother, who stated that he was capable of caring for himself and grooming himself for school.  (T. 226).  School records indicate that plaintiff was safe and functional in his school environment, and any problems plaintiff occasionally had with personal hygiene was not documented in any school records.

## F.  Health and Physical Well-being

The domain of health and physical well-being concerns the cumulative effects of physical or mental impairments and their associated treatments or

therapies on the child's functioning that were not considered under the domain of moving about and manipulating objects.  20 C.F.R. § 416.926a.

Dr. Albert assessed that plaintiff had no limitations in health and physical well-being.  (T. 232).  Dr. Chhabra observed no acute conditions.   (T. 214).  Plaintiff's overall growth, appearance, speech, behavior and gait were normal.  (T. 216).

The record fully supports the ALJ's conclusion that the plaintiff's impairments did not functionally equal a listed impairment.

The record contains substantial evidence by mental health providers and school specialists that plaintiff was functioning on either an average or low-average academic scale, and was able to function physically despite some limitations in sports and other motor activities.  The brief opinions by Dr. Keukjian are not supported by substantial evidence in the record since the extensive medical and psychological examinations and extensive school records are contrary to Dr. Keukjian's opinion.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 16, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge